IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRYL NORRED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 19-cv-969-STE |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for disability insurance benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on September 24,

2018. (TR. 71-77). The Appeals Council denied Plaintiff's request for review. (TR. 19-24). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from August 1, 2015, his alleged onset date, through December 31, 2016, the date he was last insured. (TR. 73). At step two, the ALJ determined that Mr. Norred had the following severe impairments: spine disorders, inflammatory arthritis, and chronic obstructive pulmonary disease (COPD).[1] (TR. 73). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 75).

At step four, the ALJ concluded that Mr. Norred retained the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> [Plaintiff] can stand/walk for two hours per day and can sit for six hours per day, with lifting occasionally ten pounds and frequently less than ten pounds, with an indoor climate controlled environment to account for respiratory issues, postural limitations implied by a sedentary exertional level, and with no use of ladders, ropes, or scaffolds. There is no justification for upper extremity, communication and manipulative restrictions.

(TR. 75). As a result, the ALJ concluded, after consulting with a vocational expert (VE), that Plaintiff was capable of performing his past relevant work. (TR. 77). Thus, the ALJ

---

[1] The ALJ also found Plaintiff had the following non-severe impairments: a history of hepatitis C, hemochromatosis, esophagitis/gastroesophageal reflux (GERD), anxiety, and depression. (TR. 73).

found Plaintiff was not disabled at step four of the sequential evaluation process. (TR. 77).

## III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUES PRESENTED

On appeal, Mr. Norred alleges the ALJ erred in analyzing his work record, medication compliance, pain, daily activities, and mental impairments. (ECF No. 16:10-28).

## V.   ANALYSIS

### A.   The ALJ Did Not Properly Consider Plaintiff's Work History

The ALJ determined there was "a serious question of [Plaintiff's] commitment to the workforce participation raised by his poor work history, with a total of only three years at [substantial gainful activity (SGA)] levels." (TR. 77). Mr. Norred argues the ALJ erred because the finding is contradicted by records showing he was employed over SGA levels between 1981 and 2006 (excluding 1991). *Compare* TR. 161 (listing annual income from 1976 through 2014) *with* SSA, Program Operations Manual System (POMS) DI 10501.015(B)) (listing the monthly amount of earnngs or income required to count as SGA for relevant years). Plaintiff also notes he owned his own business and attempted to work part-time until the time of the hearing.[2] (TR. 171, 623). Therefore, he contends the finding was not supported by substantial evidence.

The Court agrees that the ALJ's reasoning was flawed when he found a "serious question" as to Plaintiff's desire to work. Most significantly, contrary to the ALJ's statement, the evidence shows that Plaintiff worked more than three years at SGA levels. Further, he worked part time and participated in his business. Because no other reasons were given for the ALJ's finding and none are apparent from the record, the ALJ's finding was not supported by substantial evidence.

---

[2] While the Commissioner did not directly respond to Plaintiff's argument, he noted that Plaintiff still provided work in his business. The Commissioner admitted that "work a claimant has done may show ability to work at the substantial gainful activity level," which supports Plaintiff's argument. (ECF No. 19:15).

## B.    The ALJ Failed to Address Probative Evidence

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2. First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. And in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.* at *9.

Further, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (noting an ALJ must "discuss . . . significantly probative evidence he rejects").

### 1. Compliance with Treatment

Citing Dr. Zahaluk's records, the ALJ determined Mr. Norred was not compliant with his treatment. (TR. 76). The ALJ did not explain how Plaintiff failed to comply with his treatment, but earlier in the decision the ALJ noted that Plaintiff was advised to stop smoking and that he continued to smoke. (TR. 73-74). Dr. Zahaluk frequently addressed Plaintiff's smoking during appointments. In March 2014, he noted Plaintiff cut back on smoking, but had not made up his mind to quit due to stressors in his life. (TR. 279). In June 2014, Dr. Zahaluk wrote that Plaintiff cut down his smoking from one pack a day to one pack every three or four days. (TR. 277). In December 2014, Plaintiff's "motivation to quit [was] low." (TR. 270). In September 2015, Plaintiff was "not presently prepared to discuss smoking cessation." (TR. 260). In October 2015, Plaintiff noted he cut back on smoking, but had not stopped. (TR. 257).

6

The records also indicate periods where Plaintiff was not compliant with prescribed medication. In December 2014, Plaintiff noted he was complaint with his inhalers, but he did not feel a difference when using them. (TR. 270). But in September 2015, Dr. Zahaluk stated that Plaintiff was poorly complaint with Spiriva. (TR. 260). In October 2015, Plaintiff reported he did not use his inhaler every day. (TR. 257). Plaintiff also noted that he did not take Buspirone every day and took only one pill (rather than three) because it made him "feel like a zombie" if he took the recommended amount. (TR. 266).

An ALJ may find the intensity and persistence of symptoms inconsistent with the evidence if a claimant "fails to follow prescribed treatment that might improve symptoms." SSR 16-3p, 2017 WL 5180304, at *9. But, the ALJ should not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment . . . consistent with the degree of his or her complaints." *Id.* Here, the ALJ's cursory consideration of the issue did not address any potential reasons for Plaintiff's lack of compliance. This failure is relevant because the records contain potential reasons. As indicated above, Plaintiff noted that he did not feel a difference when using his inhaler and had side effects when taking Buspirone. (TR. 266, 270). Further, at one point, Plaintiff attributed his continued smoking, although at a lower rate, to stress. (TR. 279). The ALJ erred by failing to consider these reasons. On remand, the ALJ should consider Plaintiff's reasons for his lack of compliance.

## 2. Plaintiff's Allegations of Pain

Plaintiff also asserts the ALJ failed to consider evidence supporting his complaints of pain. Plaintiff contends the ALJ did not address the various forms of treatment he underwent that did not provide relief, such as NSAIDs, oral narcotics, position changes, ice, muscle relaxants, home exercise, oral steroids, and injections, which provided minimal or no relief.[3] (ECF No. 16:16 (citing TR. 257, 260, 298-99, 304, 324, 339, 367)). The ALJ erred by failing to discuss this evidence. *See Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011) ("Here the record is also replete with prescriptions and refills for pain medication, including narcotics. This is evidence the ALJ should have expressly considered and weighed in determining whether Mr. Sitsler's complaints of disabling pain were credible."); *Hardman*, 362 F.3d at 680 ("It was error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints."). (TR. 367). Further, Plaintiff's home care instructions recommended that Plaintiff "change positions frequently," which the ALJ did not address. (TR. 437, 444, 458, 459). On remand, the ALJ should address Plaintiff's attempts at treatment and consider such evidence when undertaking the symptom analysis.[4]

---

[3] Plaintiff was on Norco and Diazepam for his back condition in February 2015. (TR. 269). Plaintiff was given a steroid injection in March 2015 after he reported his back pain had not changed. (TR. 266). In September 2015, Plaintiff was prescribed OxyContin for back pain. (TR. 261).

[4] Similarly, the ALJ cited evidence from of the decision which indicated Plaintiff had normal range of motion in his back. (TR. 74 (citing TR. 480-81)). But Plaintiff argues the ALJ ignored contemporaneous findings by Dr. Ashford of abnormal lateral bend and rotation. (TR. 480). On remand, the ALJ should consider both the normal and abnormal findings.

The Commissioner argues that "the majority" of the evidence cited by Plaintiff is from prior to the alleged onset date or after his date last insured, but this contention is largely inapplicable to records regarding Plaintiff's treatment. One record cited by Plaintiff was from before his alleged onset date and another was from after his date last insured. (TR. 298-99, 367). Even so, those records may be relevant to Plaintiff's symptom analysis. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of [the plaintiff's] case record, and should have been considered by the ALJ."); *Frost v. Saul*, No. CIV-19-444-J, 2020 WL 68586, at *3 (W.D. Okla. Jan. 7, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered."); *Stanigar v. Colvin*, No. 13-CV-01613-WYD, 2015 WL 708609, at *3 (D. Colo. Feb. 17, 2015) (holding "the ALJ erred in failing to consider [p]laintiff's history before the alleged onset date as reflected in the medical records" and noting that an ALJ must discuss all the significantly probative evidence and "[t]his includes medical evidence before the alleged onset date"). And even if those records are not relevant, most of the records cited by Plaintiff are from within the relevant time period.

The Commissioner also argues the decision was supported by substantial evidence because the ALJ cited objective medical evidence—the absence of limited musculoskeletal ranges of motion, normal muscle strength, and an MRI showing mild findings and no evidence of discitis. (TR. 74, 76.) The ALJ also noted Plaintiff denied musculoskeletal symptoms, such as back and joint pain. (TR. 74, 76). While this evidence may support

9

the ALJ's decision, it does not excuse the ALJ's failure to discuss probative evidence that supports Plaintiff's claims. The Commissioner also cites various evidence from Dr. Catino, Dr. Ashford, and Dr. Bender which, as Plaintiff notes in his reply brief, the ALJ did not cite in support of her step-four findings. (ECF Nos. 19:5; 20:2-5). The Court will not entertain this *post-hoc* argument. See *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

On remand, the ALJ should consider and address Plaintiff's treatment and attempts at treatment.[5]

### 3. Plaintiff's Daily Activities

Plaintiff contends the ALJ erred in his consideration of his daily activities. The ALJ noted that Plaintiff has been able to "take care of pets with some help, prepare simple meals and use the microwave, do the laundry, and shop in stores, activities which require even more than sedentary exertion." (TR. 77). Further, the ALJ stated that Plaintiff "is able to talk on the phone to others every other day, read and watch television, indicating the lack of chronic pain, and he said he works twice a week for one to two hours." (TR.

---

[5] Plaintiff also contends the ALJ erred by not addressing Dr. Krumerman's February 2018 recommendation that Plaintiff undergo a new lumbar MRI to ensure there was no evidence of discitis or new developments. (TR. 626). The Court does not find this argument persuasive. Because the March 2017 MRI—which Plaintiff underwent after his date last insured—showed no evidence of discitis, TR. 623, any future MRI showing discitis would have no bearing on his condition during the relevant period. Plaintiff further asserts the ALJ should have explained why findings from the MRI "would not preclude sedentary exertion." (TR. 76). But the ALJ's statement is just another way of saying the MRI is evidence in support of the RFC, which requires sedentary work. The Court will not reweigh the evidence. See *Vigil*, 805 F.3d at 1201.

77). Plaintiff asserts the ALJ mischaracterized this evidence and the activities of daily living amount only to "sporadic performance." (ECF No. 16:19-20).

The ALJ erred in his consideration of Plaintiff's ability to prepare meals. While the ALJ correctly noted that Plaintiff makes simple meals and uses the microwave, the ALJ did not address Plaintiff's qualifying statement that he cannot stand long enough to prepare a full meal. (TR. 196). Plaintiff's ability to stand is relevant because the ALJ found he could stand or walk two hours per day. (TR. 75). The ALJ's finding that Plaintiff's ability to talk on the phone, read, and watch television equated to the absence of chronic pain is also problematic. *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) ("As for watching television, that is hardly inconsistent with Mr. Krauser's allegations of pain and related concentration problems.").[6]

The Commissioner argues that the "activities reflected inconsistencies with other evidence, and in conjunction with other reasons the ALJ cited for discounting Plaintiff's symptoms, Plaintiff's activity was a legally sufficient basis for the ALJ's determination in this regard." (ECF No. 19:15). But that is left for the ALJ to decide on remand after a proper consideration of the evidence.[7]

---

[6] Plaintiff also argues that his ability to take care of pets is limited to letting them out to use the bathroom and can no longer feed or walk his dogs. (TR. 195). But this is not so fundamentally different from the ALJ's description to amount to a mischaracterization of the evidence.

[7] Plaintiff takes issue with the ALJ's finding that his daily activities allowed "even greater than sedentary exertion" and argues that his "daily activities do not rise to the performance of sedentary work." (ECF No. 16:21). Because the ALJ will reconsider Plaintiff's daily activities on remand, the Court does not reach this issue. *See Watkins v. Barnhart*, 350 F.3d 1298, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### 4. Mental Impairments

Plaintiff contends the ALJ erred in his consideration of Plaintiff's mental impairments at step four. (ECF No. 16:21-28). At step two, the ALJ found Plaintiff's anxiety and depression were medically determinable impairments, but not severe. (TR. 73). There, the ALJ noted Plaintiff was diagnosed with moderate episode of recurrent major depressive disorder in November 2016. Citing only Plaintiff's Function Report and Disability Report, the ALJ found Plaintiff had mild limitations in each of the four areas of mental functioning. (TR. 74-75). The ALJ recognized that the mental RFC assessment at steps four and five "requires a more detailed assessment" and stated that the RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.'" (TR. 75).

The RFC did not contain any mental limitations. (TR. 74). In the step-four discussion of Plaintiff's Function Report and Disability Report, the ALJ noted that Plaintiff "handles stress as well as he can" and that "he indicated he has had no mental health treatment." (TR. 76). Again citing Plaintiff's function report, the ALJ stated: "Although he has been diagnosed with a mental condition, he has had no mental health treatment, indicating the absence of emotional pain." (TR. 77 (citing 179-88)). The ALJ also cited a June 2016 examination in which the Plaintiff was negative for depression and memory loss. (TR. 76).

Plaintiff contends that, contrary to the ALJ's assertion, he received treatment for his mental conditions. He notes that he reported to Dr. Zahaluk in April 2015 that he was depressed, anxious, and stressed, but Zoloft provided no relief and made him feel "like a

12

zombie." (TR. 264-66). In November 2016,[8] Plaintiff presented to Dr. Ashford nervous, anxious, and tearful. (TR. 306). Dr. Ashford prescribed him prescribed Cymablta "to improve [Plaintiff's] anxiety as well as depression." (TR. 308). In February 2017, Dr. Ashford again noted Plaintiff was tearful and positive for depression. (TR. 296, 298). Plaintiff also testified he has crying spells every day, feels like isolating himself, is irritable, loses interest in things, has thoughts of suicide and hopelessness, decreased self-esteem, a fear of leaving the house, and a lack of motivation.[9] (TR.45-46).

While the evidence the ALJ addressed in the decision was accurate, he again did not address probative evidence supporting Plaintiff's claim. While Plaintiff reported not seeing a doctor for a mental condition in the Disability Report, TR. 183, it is belied by the record which indicates reports of depression and associated symptoms to primary care doctors as well as Plaintiff's testimony. The ALJ had an obligation to address this evidence,

---

[8] The Commissioner asserts there was an absence of treatment during the relevant time period. (ECF No. 19:7). But the November 2016 appointment was between the alleged onset date and date last insured. Further, as addressed above, evidence from before the alleged onset date and after the date last insured may be relevant.

[9] The Commissioner argues that a "claimant's statements about symptoms, such as pain or nervousness, will not alone stablish disability." (ECF No. 19:8). But Plaintiff does not rely exclusively on such statements in his argument. Further, in furthering this argument, the Commissioner contends Dr. Ashford's records also include notations which are less favorable to Plaintiff's claims. But, the Commissioner did not address the record and the Court will not engage in post hoc analysis. *See Haga*, 482 F.3d at 1207-08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

13

but he failed to do so. On remand, the ALJ should address probative evidence related to Plaintiff's mental conditions.[10]

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on September 21, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiff also contends the mental demands of his past relevant work is not necessarily consistent with the mild mental limitations the ALJ found at step one. (ECF No 16:26-28). The Court does not reach this question because the ALJ's consideration of the issues on remand may affect the consideration of this issue. See *Watkins*, 350 F.3d at 1299.